The last case on today's docket is the case of People v. Mosley, Michael Mosley, and we have Mr. Robert Burke as the appellant, and we have Mr. Stanton for the appellate. And you may proceed. Robert Burke May it please the Court, I'm Robert Burke. I'm with the Office of the State Appellate Defender. I represent Michael Mosley. We're asking this Court to reverse this conviction and remand it for a new trial. The state and the defense both agree that the jury instruction at question here is based on jury instruction IPI criminal 14-10. We both agree that that is an error in the way that it was worded to say that you should quit if there's been a failure of proof on each of the four propositions. The only real question is the closeness of the evidence. If the evidence is close, it should be reversed. I believe the evidence is close. When Mr. Mosley was in the motor mart there in Belleville, downtown Belleville, a manager said he saw Mr. Mosley take a bottle of wine, a bottle of Mogan David. And that he never lost eye contact with Mr. Mosley after he saw Mr. Mosley put that bottle in his pants. The store clerks said that he did not appear to have anything in his pants. The manager said I never lost eye contact with him until the police got there. From when to when? From the time that he put the turn and faced, he was walking to the counter turn, faced the person in the cooler, the manager, and that's when supposedly he put the bottle in his pants. And the manager says I never lost eye contact, or he never was ever out of my sight until the police arrived. Because wasn't he apprehended at a bus stop? That's directly across the street. Okay. About three blocks west of Square in Belleville. So what you're contending is then that that meant that he was in his line of sight even when he was apprehended at the bus station across the street. That's what you're understanding of that. Yes, I believe that's what his testimony was. Okay. I'm just trying to clarify that for myself. The officer, I think it was Andy Leifer, asked him some questions about that and he stuck to that. He never was out of my sight. When the police got there, it was his girlfriend who had the Mug and David in her diaper bag. And she also had some stolen, I assume it was stolen, there's a problem there too, but she also had some Colt 45 malt liquor. Now, why say I assume it was stolen? First of all, there was eight cameras in the motor. And they didn't introduce the video from any of them at the trial. They did or didn't? Did not. Okay. They can do a computerized inventory of the Moto Mart. This is in the record. The manager talked about this to show if anything in the Moto Mart's missing. Everything's computerized. They didn't check the computer records to see if a bottle of Mug and David was missing that day. So what we know is the people at the checkout counter say he didn't appear to have a bottle of wine in his pants. I thought one of the clerks in the brief said he did. She did see it. I thought that was the manager. Oh, okay. The manager was in the cooler, stopping the cooler. And he saw Mr. Mosley reach in, take out a bottle of Mug and David. Well, I thought the clerk said that she saw Mug and David in his pants. Well, then I may be mistaken about that. We'll check it. As I said, I think one of the clerks testified, and it was a male, and he testified that. That's the way I remember it, but I may be wrong. But at any rate, when the police got there, there was Mug and David in Ms. Livingston's diaper bag. But no one ever says they saw that Mr. Mosley handed her the bottle put in her diaper bag. No one knows when it got into her diaper bag. He was in the motor car. He was perhaps thinking about buying some Mug and David, or he wanted her to buy some Mug and David. He bought a couple of sodas and had the receipt for his sodas. And then the police show up, and she has the wine. They say, we're taking both of you, and DCFS is taking your kid. And he said, okay, look, I did it. Just arrest me. And then he repeats something about that conversation on the DVD about seven and a half minutes into the DVD. And other than that, really, there's no evidence that he stole a bottle of Mug and David or that he had the intent to steal while he was in the store. And because it was such a close case factually, an error by constructing the jury that the state has – that the state – you can only acquit if the state has failed to prove all four elements should be reversible error.  Thank you, Mr. Burke. You'll have the opportunity for rebuttal, Mr. Ting. May I please report? My name is Timothy James Ting, and I represent the people of the state of Illinois. Your Honors, in my time before you, I will show you why the defendant's convictions for burglary and retail theft should be affirmed by this moment in court. Now, as the defendant has stated and as the state concedes, there was a jury instruction that was in front. However, Your Honors, the jurors that convicted this defendant were capable, smart citizens of the community. They had no problem in convicting this defendant, and the defendant wants a second chance because of one error that in the totality of those jury instructions meant nothing. As the court stated in Illinois Supreme Court in Peeble v. Green, it's well settled that taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury. Now, improper jury instructions can be reviewed under two – under plain error doctrine, which has two prongs. Either one, the evidence was closely balanced, or two, that there was great error. Both of those prongs fail here. Now, the defendant addresses the evidence was closely balanced, so we'll begin there. The evidence here was not closely balanced. Justice Welsh, you had a question about whether it was the manager or the clerk. It was the manager. You can find that on page 90 through 94 and 125 of the record. Can I ask you the – he was stalking. Does that mean he was on the other side where – stalking from the back, or do you know? Was he standing next to him, or – He was standing next to him. I don't know exactly what he was doing, but from the record, it states, and I quote, the manager was no more than four feet, end quote, away from the defendant with, and I quote again, a clear and unobstructed view. It could be behind, looking through the glass doors, couldn't it? Certainly it could, Your Honor, but that being the case, okay, that's one piece of the evidence. Here we have more. Not only do we have that, and if we even give that favorable interpretation to the defense – Okay, let me ask you one question. Apparently the argument is never out of view. Okay, then there's no testimony, is there, that when it was transferred from the alleged perpetrator to the woman with the purse, is there? Well, the defendant – How did that happen? The defendant states specifically that he committed the burglary, not just – I'm just asking you to answer my question. Was there any testimony as to I saw him hand it, take it out of his pants or whatever, and hand it to the woman and put it in her purse? Not to my recollection, no. So it might have been out of view at that point. It had to be. If he's saying it was never out of view, and he's saying I saw him put the bottle in his pants, and the bottle's not in his pants, it's in a diaper bag, it had to get there somehow. Certainly it didn't. And, Your Honors, that could be something where we could say, okay, there may be some question. But again, we have to look at the defendant's own words. He not just confessed once. He confessed twice. He confessed at the scene, as you can find on page 149 and 164 of the record. Then the next day after the burglary was committed, he voluntarily came to the police station, as you can find in People's Exhibit 7, minutes 7 through 8, and on the record, page 156, where he again confessed to the crime. Not one confession, but two confessions of the crime at the police station. He voluntarily waived his Miranda rights, as you can find on 152 to 154. And tellingly, he did not even contest the voluntariness of his confession, as you can find in 254 to 255 of the record. As he is well settled, and I quote from People v. Prim, confessions are the most probative and damaging types of evidence that can be admitted against a defendant. Again, I state to this court that there are multiple courts that have held that evidence cannot be closely bounded when there has been a confession made. And I cite the three cases which state that specific proposition. People v. Ivory, People v. Prim, and People v. Babaton, which are all located in the… Would any of those cases have coercion potentially involved? Your Honors, we cannot. We cannot say there is coercion. And while those cases may not have coercion or the potential for coercion, here the defendant cannot claim coercion when he tested or when he voluntarily confessed twice. If there is some semblance of coercion perhaps at the scene, then surely that argument would be made. But here we have that voluntary confession again at the police station where he voluntarily waived his rights according to two officers. The two confessions are multiple confessions which voluntarily he gives. Even if there is an argument that evidence was closely balanced with the first confession, then the second confession takes any reasonable doubt away. But wouldn't that same, you know, alleged threat still be out there that, you know, we're going to take the child away if that is what really motivated him to confess falsely? Your Honors, there could be an argument. The statement states, you know, that obviously there's going to be that argument made. But what we have from the record are two confessions. We have rules of law that states confession, just one confession, shows that there is evidence cannot be closely balanced when there is one confession. We have two confessions here that show particularly that he stated he committed the crime. Even if there is the threat of the police that may be longstanding, it's inferring into the record there what could be or could not be. But what we have here are two confessions. And when we look at the testimony of two officers who stated that that confession was voluntary, not just once but twice, we have to say that that evidence was not closely balanced. Do you contest the defense proposition that the statement, I took it, and then the action the next day was subsequent in time to the police saying, we're going to clear this up, we're going to arrest both of you and take the child to the Children and Family Services? Are you stating that both statements were made after that police statement? Yes. Yes. Both statements were made after. In this statement, we would acknowledge that fact. We're not going to try to dress up the facts any way than what they are. However, two confessions is telling us the defendant's culpability. Confessions are the most damaging, probative type of evidence there can be. And the hint of coercion, surely, if there was coercion, Your Honor, why was it not in a post-trial motion? There was no indication until appeal that there was ever coercion. The confession was voluntarily made. The defendant made no claim against the coercion of his voluntary confession until appeal. Surely, if Fenn's all notions of fair play suddenly ring out, the confession was not voluntary. When at the lower level, he had ample opportunity to defend himself against that, and he did not. Your Honor, as well, the error was not grave. Now, granted, there was an error, and the state concedes it. Essentially, the jury's instruction states, and I quote, If you find from your consideration of all the evidence that each one of these propositions has not been made beyond reasonable doubt, you should not find the defendant not guilty. Granted, what that's saying is that's heightening the standard for not guilty by saying each instead of any one. But the Illinois Supreme Court already tackled this question in People v. Easley and People v. Lucas. There, it stated in the not guilty instruction, if you find these propositions were not proved beyond reasonable doubt, you should find the defendant not guilty. And by saying these, it should have said any of these. But by saying these, it was all-inclusive that the jury had to find every one of those propositions beyond reasonable – or not beyond reasonable doubt, thus raising the level of not guilty. And the court admitted that that was, in fact, an error. But the Illinois Supreme Court still held that it was not a grave error because of this. And I quote from the Easley court. We find, however, that this error was harmless in light of our conclusion that the defendant suffered no prejudice as a result. Our conclusion is based on the jury's verdict of guilty. Under these instructions, the jury received, as well as the IPI criminal 2D instructions, in order to reach a verdict of guilty, the jury had to find that they had proven their propositions beyond a reasonable doubt. The jury's verdict shows that they found that they proved the elements of the crime. Any error present in the not guilty instruction did not result in any prejudice to the defendant. As the jury found, the propositions had been proved beyond reasonable doubt. That makes you wonder why we have that instruction. I'm sorry, Your Honor? You wonder why we even bother to have it if it doesn't make a difference if they're found guilty. Your Honor, that's a good point to make. And the state would say that maybe it doesn't really make a difference. What the cases show is that what has to be shown is that the beyond a reasonable doubt standard is clearly enunciated to the defendant. And as Justice Stapleton, you make a good point. The not guilty instruction is largely irrelevant if they find him guilty. Actually, I was being somewhat ironic with that. I really – I do think that it is something that has value and merit. Your Honor, again, I would point the court to this record. Taken as a whole, we have to look at all the jury instructions. Here, the jury was properly informed by the instructions, and I quote, If you find from your consideration that all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty. That's 191-217 of the common law record and 221-220 of the transcript record. Again, the jury was correctly informed by the trial court about the guilty verdict. The state has the burden of proving the guilt of the defendant beyond a reasonable doubt. And this burden remains in the state throughout the case. The defendant is not, in part, required to prove his innocence. Your Honor, I see that my time is up, and I thank you for your time. Thank you, Mr. Tate. Do you have a rebuttal? Mr. Price. Just briefly, Your Honor. Just to explain, I think that the layout of the cooler is there's a back door back in the back part of the store. You go in, then there's a freezer door. You go through the freezer door, you're in the cooler, and the front of the cooler is glass doors. And then, I believe the manager said there's a gap about two inches between every shelf, the iron shelf, and there's a gap of six inches between the shelves. I have one question. Was there a motion to suppress filed in this case? I don't think there was, Your Honor. No motion to suppress. That's all I have. Thank you. Are there other questions? I don't think so. Thank you, Mr. Berg. Thank you. Mr. Tate, thank you both for your briefs and your arguments. And we'll take the matter under advisement.